UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELECT BUILD ILLINOIS, LLC, and IVAN HOLLE, | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 8653 |
| v. | ) ) | |
| | ) | Judge Sara L. Ellis |
| ACE AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiffs Select Build Illinois, LLC ("Select Build") and Ivan Holle (collectively, "Plaintiffs") and Defendant ACE American Insurance Company ("ACE") bring cross-motions for summary judgment on Plaintiffs' Complaint for declaratory judgment that, under Select Build's insurance contract with ACE, Select Build is not responsible for the deductible when a claim is made against an additional insured on the policy, ACE must pay to defend the underlying tort action against Select Build's subcontractor, and ACE is obligated to provide coverage in the underlying tort action for up to the per occurrence limit of $1.9 million dollars. Because the clear language of the insurance contract obligates Select Build to pay the deductible and allocated loss adjustment expenses and defense costs for claims against additional insureds, Plaintiffs' Motion for Summary Judgment [20] is denied and ACE's Motion for Summary Judgment [22] is granted. The Court declines, in its discretion, to issue a declaratory judgment that ACE must provide coverage in the underlying tort action, as that issue is not yet ripe for determination.

# BACKGROUND[1]

Select Build, formerly known as RCI Construction, LLC ("RCI Construction"), received through assignment a contract between Realen Homes LP ("Realen Homes") and Residential Carpentry, Inc. for carpentry work on homes in Oswego, Illinois. Select Build is a subsidiary of Building Materials Holding Corporation ("BMHC").

ACE issued an Excess Commercial General Liability Policy to BMHC for the policy period November 11, 2006 to November 11, 2007 (the "Policy"). The Policy has a General Aggregate Limit of $25 million dollars with an Each Occurrence Limit of $1.9 million dollars. BMHC has a Retained Limit of $100,000, meaning a self-insured retention on each occurrence.

The Policy states:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under SECTION II. WHO IS AN INSURED.

Doc. 19, Ex. 3 at 8. "Section II. Who is An Insured" discusses to what extent various members of the different possible categories of "insureds" (individuals, partnerships, or limited liability companies) are covered by the Policy; for example, a limited liability company is an insured, and its members are also insureds but only with respect to the conduct of its business. *Id.* at 15. BMHC is designated as the "Named Insured" in the declaration pages and further noted as a "Corporation." *Id.* at 2. BMHC and its subsidiaries are Named Insureds, per Policy Endorsement 1.

Endorsements 3, 4, and 12 amend the definition of "insured" in Section II to include "as an additional insured" "[a]ny Owner, Lessee, or Contractor whom you have agreed to include as

---

[1] The facts in this section are derived from the Parties' Joint Statement of Undisputed Material Facts [19].

an additional insured under a written contract[.]" *Id.*, 36.[2] Therefore, through the contract with Residential Carpentry, Inc. that was assigned to Select Build, Realen Homes became an Additional Insured under the Policy.

> Coverage A under the Insuring Agreement provides:
>
> We will pay the insured for the "ultimate net loss" in excess of the "retained limit" shown in the Declarations that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts of services is covered unless explicitly provided for under DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS. But the amount we will pay for the "ultimate net loss" because of damages is limited as described in LIMITS OF INSURANCE (SECTION III).

*Id.* at 8.[3] Of the defined terms contained in Coverage A, the relevant definition for this lawsuit is that of "Ultimate net loss":

> "Ultimate net loss" means the total amount which the insured is legally obligated to pay as damages due to an "occurrence" or offense arising out of covered claims or "suits" either by an adjudication or a settlement to which we agree in writing and includes interest that accrues after entry of the judgment and deductions for recoveries and salvages which have been or will be paid. "Ultimate net loss" does not include any of the expenses incurred by the insured or us in connection with defending the claim or "suit."

*Id.* at 24.

---

[2] The Parties cite different endorsements for the definition of "additional insured." *Compare* Doc. 23 at 2 (citing Endorsement 3), *with* Doc. 21 at 2 (citing Endorsement 12). Whether Realen Homes ultimately qualifies as an "Additional Insured—Owners, Lessees or Contractors—Completed Operations" (Endorsement 3), "Additional Insured—Owners, Lessees or Contractors—Scheduled Person or Organization" (Endorsement 4), or "Additional Insured—Designated Person or Organization" (Endorsement 12) makes no difference to the Court's analysis here, because the relevant language of these endorsements is identical and the parties agree that Realen Homes is an additional insured under the Policy.

[3] The Policy also contains a Coverage B for Personal and Advertising Injury Liability, *id.* at 13, but that type of coverage is not at issue in this suit.

The Policy also contains a Deductible of Self-Insured Retention (Endorsement 52). This Endorsement sets a Deductible Per Occurrence of $1,900,000, above the retained limit of $100,000:

1. In consideration of a reduced or adjusted premium, the Limits of Insurance set forth in the policy declarations are subject to and include the Deductible amount stated above, and are in excess of the "retained limit" stated above.

   a. The Deductible Per Occurrence shall apply, in excess of the "retained limit," separately to the following:

   (1) All damages under Coverage A arising out of any one "occurrence"

   . . . .

2. In the event you are unable to pay the Deductible amount or any portion thereof, our obligation to pay damages to satisfy a judgment or pay a settlement shall include the Deductible amount or any portion thereof. . . .

. . . .

4. You and we mutually agree that you will contract with the Claims Service Organization shown in the Schedule to provide investigation, administration, adjustment, and settlement services, and to provide for the defense of all claims or "suits" arising under this policy.

5. You agree with us that we shall not have any duty to defend any such "suit."

6. You agree with us that we shall have no duty to pay any "allocated loss adjustment expense" under the policy, either within or in excess of the Deductible amount, with respect to any claim or "suit."

7. You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence and all "allocated loss adjustment expenses" related to such claims.

. . . .

9. It is understood that your duty to pay the "retained limit" is unaffected by this endorsement, and that your obligation to pay "ultimate net loss"

> within the "Deductible Per Occurrence" is in excess of the "retained limit."

*Id*. at 103–104. Endorsement 52 defines "Deductible Per Occurrence" as:

> [T]he amount of "ultimate net loss" under this policy which you have a duty to pay in excess of the "retained limit" and which arise from (i) any one "occurrence" to which insurance applies under this policy or (ii) "personal and advertising injury" sustained by any one person or organization.

*Id.* at 104. "Allocated Loss Adjustment Expenses" is defined in Endorsement 52 as:

> [A]ny defense, investigation, settlement or legal expenses, or prejudgment interest arising out of any "occurrence" or offense, or interest on judgments, as referred to in the section of the policy entitled "DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS."

*Id.*

The Policy also states that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy." *Id.* at 17.

On May 30, 2007, Holle was injured while working on a Realen Homes construction site. Holle was a Select Build employee. Holle sued Realen Homes on April 27, 2011 in the Cook County Circuit Court. That case is still pending. Because Realen Homes is bankrupt, Holle agreed by stipulation to limit his recovery to any coverage available to Realen Homes under the Policy.

On June 16, 2009, BMHC and its subsidiaries, including Select Build, filed for bankruptcy and on December 17, 2009, the United States Bankruptcy Court for the District of Delaware approved a reorganization plan that enjoined all claims against Select Build. On July 2, 2013, Select Build moved in the bankruptcy court to bar Holle from pursuing claims under the Policy. Holle objected, but before the court could rule, Holle and Select Build entered into a stipulation that allowed Holle to sue ACE in Select Build's name to determine whether Select Build must reimburse or pay ACE the deductible and allocated loss adjustment expenses (i.e.

5

defense costs) in Holle's suit against Realen Homes. Holle agreed he would only seek to collect that portion of the settlement or judgment that exceeds the self-insured retention and deductible unless it was adjudicated that Select Build had no obligation to cover the deductible amount. Simply put, Select Build assigned Holle the right to seek coverage under the Policy in return for his promise to limit his recovery to amounts ACE, not Select Build, would pay under the Policy.

On July 22, 2014, Holle, suing on his own behalf and in the name of Select Build, sought a declaratory judgment against ACE in the Circuit Court of Cook County, Illinois. ACE removed to this Court. The parties have filed cross motions for summary judgment. Plaintiffs ask the Court to find that:

a) The Deductible Per Occurrence provision of the ACE Policy only applies to claims against Named Insureds;

b) The obligation to pay or reimburse ACE for Allocated Loss Adjustment Expenses under the Policy only applies to claims against Named Insureds;

c) Select Build has no obligation to pay or reimburse ACE for a Deductible in connection with the underlying action by Holle against Realen Homes;

d) Select Build has no obligation to pay or reimburse ACE for Realen's litigation expenses in connection with the underlying action by Holle; and

e) ACE must provide coverage up to the per occurrence limit of $1.9 million in the underlying action by Holle against Realen.

Doc. 20 at 2. ACE asks for summary judgment in its favor on Plaintiff's complaint in its entirety.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and

6

affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering Plaintiffs' motion for summary judgment, the Court views all evidence in the light most favorable to ACE; and when considering ACE's motion, the Court views all evidence in the light most favorable to the Plaintiffs. *See id*.

## ANALYSIS

I.  **Select Build's Liability for the Deductible**

ACE argues that the Policy requires Select Build to pay all liability within the $1.9 million deductible that Realen Homes may incur in the underlying action. Select Build argues that it only has to pay the deductible when a claim is made against it, as the Named Insured, not when the claim is against an additional insured. For the following reasons, the Court finds the Policy terms to be unambiguous: Select Build is responsible for all sums it becomes legally obligated to pay within the deductible whether the claim is against it or an additional insured.

7

The Court's primary function when construing an insurance policy is "to ascertain and enforce the intentions of the parties as expressed in the agreement." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1078, 156 Ill. 2d 384, 189 Ill. Dec. 756 (1993).[4] To do this, the Court analyzes the policy as a whole, considering the type of insurance contracted for, the risks exchanged, the subject matter, and the purposes of the entire contract. *Id.* If the policy terms are plain and unambiguous, the Court will give them their plain, ordinary meaning, without "search[ing] for ambiguity where there is none." *Id.*

While a $1.9 million per occurrence deductible on a $1.9 million per occurrence Policy might at first glance seem strange, this is a fairly standard type of insurance arrangement called a "fronting policy." *See* Mark W. Flory & Angela Lui Walsh, *Know Thy Self-Insurance (And Thy Primary and Excess Insurance)*, 36 Tort & Ins. L. J. 1005, 1006–1007 (2000–2001). A kind of "self-insurance," fronting policies can differ, but essentially the insured administers all claims and reimburses all settlements or judgments paid, while the insurer has no defense obligation and acts only as a surety for the insured's ability to pay. *Id.; Air Liquide Am. Corp. v. Cont'l Cas. Co.*, 217 F.3d 1272, 1274 (10th Cir. 2000) (describing similar insurance posture). This arrangement allows the insured to fulfill state financial laws, guaranteeing to the third party that the claims will be covered, while keeping the risk in exchange for lowered insurance costs. Flory, *supra* at 1006–1007; *see also Playtex FP, Inc. v. Columbia Cas. Co.*, 609 A.2d 1087, 1091 (Del Super. Ct. 1991) (explaining that fronting policies "have no risk transfer associated with them"). Fronting can come in the form of a deductible, which is a "specific sum that is

---

[4] The Parties do not cite and the Court cannot find a choice of law provision in the document. "In a case arising under our diversity jurisdiction, we apply the law of the forum state." *Auto. Fin. Corp. v. Smart Auto Ctr., Inc.*, 334 F.3d 685, 688 (7th Cir. 2003). Both Parties cite Illinois law as governing the Policy, and neither side establishes any actual conflict of applicable state laws. *See Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 907–908, 2014 IL 116389, 31 Ill. Dec. 493 (2014). Therefore, the Court applies Illinois law.

subtracted from the insurer's obligation to pay a loss under the policy," or a self-insured retention, a dollar amount not covered by insurance that may apply to payments of judgment, settlements, adjustments, or defense expenses. Flory, *supra* at 1007. Both forms of self-insurance must be exhausted before the insurer's responsibility kicks in. *Id.*

Neither Party disputes that the Policy's $100,000 self-insured retention would apply to any finding of liability in the underlying case. Select Build argues, however, that the $1.9 million Deductible Per Occurrence applies only to claims brought directly against it as the Named Insured, not against Realen Homes as an additional insured, therefore ACE is responsible for any judgment up to the $1.9 million per occurrence limit in the underlying suit.

ACE points to the language of the "Insuring Agreement" on the first page of the Policy and in Endorsement 52, which states: "You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence," Doc. 19, Ex. 3 at 8, 104, to argue Select Build is responsible for any liability within the deductible. "You" is defined as "the Named Insured shown in the Declarations," *id.* at 8, i.e. BMHC, *id.* at 2, its subsidiaries, including Select Build, *id.* at 30. "Insured" is defined to mean "any person or organization qualifying as such" under Section II, "Who is an Insured," which delineates the scope of coverage for various members, employees, or other personnel of an insured. *Id.* at 15. And Endorsement 12 amends "Section II" to "include as an insured" "[a]ny person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss." *Id.* at 47; *see also id.* at 36, 37 (Endorsements 3 & 4). Therefore when Endorsement 52 is read with these terms as defined in the Policy, it states: "You [Select Build] will pay all sums the insured [Realen Homes] becomes legally obligated to pay within the Deductible Per Occurrence." *See id.* at 104. Nothing in the language of the Policy excludes

9

additional insureds like Realen Homes from the definition of "insured" for the purposes of this Endorsement or the Policy as a whole.

Other courts have interpreted similar provisions to find the Named Insured responsible for the deductible when the claim is against an additional insured. Analyzing a $2 million dollar policy with a $500,000 deductible, in a like situation of one contractor insuring the other, the court found that their contract did not forbid the policyholder from taking on a large deductible, but the policyholder was then responsible for paying the deductible in a claim by the additional insured. *Barletta Heavy Div., Inc. v. Layne Christensen Co.*, No. 07-12084-DPW, 2011 WL 1399692, at *7 (D. Mass. Apr. 13, 2011) (noting, "[t]his interpretation is supported by the findings of other courts that the policyholder is responsible for deductibles applicable to an additional insured," and collecting cases). That policy contained very similar language:

> This endorsements states as Section D, that [the insurer] "may pay any part or all of the deductible amount to effect settlement of any claim or 'suit' and, upon notification of the action taken, *you* shall promptly reimburse us for such part of the deductible amount as has been paid by us. "You" is defined in the policy as [the policyholder], the "Named Insured."

*Id.* (citations omitted). And the court concluded, "[t]his provision clearly makes it the named insured's responsibility to reimburse the deductible to the insurer." *Id.* (internal quotation marks omitted). Similarly, another court found,

> the plain language of the [policy] imposes the burden of reimbursing the deductible on the party qualifying as "named insured," as defined, and not on those qualifying as "persons insured," "insured," or "additional persons insured— required by contract" as defined elsewhere,

when the deductible language read:

> The company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the *named insured* shall promptly reimburse the company for such part of the deductible amount as has been paid by the company.

10

*Hartford Accident & Indem. Co. v. U.S. Nat. Res., Inc.*, 897 F. Supp. 466, 473 (D. Or. 1995).

In a case with strikingly similar facts, ACE was defending against a claim by an additional insured for payment under a policy with a $2 million dollar Deductible Per Occurrence Endorsement. *See Nordby Constr., Inc. v. Am. Safety Indem. Co.*, No. 14-CV-04074-LHK, 2015 WL 1737654, at *5 (N.D. Cal. Apr. 14, 2015). That endorsement exactly mirrors Endorsement 52, stating "[y]ou will pay all sums that the insured becomes legally obligated to pay within the Deductible Per Occurrence and all 'allocated loss adjustment expenses' related to such claims," and "[y]ou will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence." *Id.* at *5–6. That court found "the clear and unambiguous language" of that endorsement provided that the policyholder was responsible to pay "all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence." *Id.* at *6 (internal quotation marks omitted). Therefore, because the additional insured brought suit against ACE for less than the $2 million deductible, ACE would not be liable under the terms of the policy and the court dismissed the complaint against it. *Id.*[5]

These courts' holdings comport with the general understanding that the named insured is responsible for the self-insurance coverage:

> Where a liability policy affords coverage for an additional insured (e.g., a permissive user of a motor vehicle or an entity for whom the named insured promised to procure insurance), the named insured or insurer may take the position that the additional insured is responsible for paying the SIR ["self-insured retention"]. Although few reported cases have addressed this issue, the

---

[5] In *Nordby*, the additional insured tried to use *Hartford Accident* to argue for a general rule that only the named insured and not an additional insured has the responsibility to pay the deductible as a matter of law, presumably on the theory that because ACE had refused to pay within the deductible, Nordby itself was having to "pay" it. *See id.* at *7. The *Nordby* court explained that *Hartford Accident* did not state a general rule, but rather was based on a close reading of that contract's terms. *Id.* The court further concluded that the additional insured had not pointed to any policy language requiring ACE to pay the claim and then seek reimbursement only from the named insured. *Id.* *Nordby* does not undercut *Hartford Accident* or make its holding that the named insured is responsible for the deductible any less applicable to this case.

> courts that have considered the question have generally concluded that a deductible or SIR obligation is owed only by the named insured because only the named insured entered into the insurance contract that created the obligation. Some courts have gone as far as stating that, even where policy benefits are paid solely on behalf of an additional insured, the named insured is obligated to pay the SIR.

Flory, *supra* at 1011; *see also* Couch on Insurance § 226:133 (3d ed. 2015) ("Deductibles": "An insurer is entitled to reimbursement from the named insured or from a party to the insurance contract of deductible amounts paid on behalf of an insured, at least where the insurer can identify the deductible amounts paid.").

The plain and unambiguous terms of the Policy make it clear that Select Build must pay all sums Realen Homes "becomes legally obligated to pay within the Deductible Per Occurrence." *See* Doc. 19, Ex. 3 at 104.

Plaintiffs argue that when the terms "Deductible Per Occurrence" and "ultimate net loss," both in Endorsement 52, are read together, they show that the Deductible only applies to a claim against a Named Insured. Plaintiffs explain that "Deductible Per Occurrence" is defined as "the amount of 'ultimate net loss' under this policy which you have a duty to pay in excess of the 'retained limit'" and "you" is the "Named Insured," i.e. Select Build. *Id.* Therefore, the Deductible is the amount of "ultimate net loss" the Named Insured must pay over the retained limit. Plaintiff then states that because "ultimate net loss" is defined as "the total amount which the insured is *legally obligated to pay as damages*," *id.* at 24, this means "*damages* due to a judgment or settlement on a claim covered by the policy," Doc. 24 at 3. Plaintiffs then conclude:

> Putting the foregoing definitions together, as required by the terms of the policy, "Deductible Per Occurrence" means the amount of *damages* that the Named Insured is legally obligated to pay due to a judgment or settlement on a claim covered by the policy in excess of the retained limit. Because the Named Insured is legally obligated to pay damages only when there is a claim against it, the Deductible can only apply when there is a claim against the Named Insured.

*Id.* Plaintiffs cite no cases or clear Policy language to support the logical leap that because the Named Insured is responsible for damages "on a claim covered by the [P]olicy" that it would only be responsible for claims against a Named Insured under the Policy. The operative language in the "ultimate net loss" definition is the amount "which the insured is legally obligated to pay as damages" or, in Plaintiffs' wording, damages "on a claim covered by the [P]olicy." Doc. 19, Ex. 3 at 24; Doc. 24 at 3. Plaintiffs do not argue that claims against Realen Homes (or any other additional insureds) are not covered under the Policy and cannot point to anything to suggest that Select Build as a Named Insured would not be legally obligated to cover a claim against an additional insured irrespective of the deductible.

Plaintiffs also criticize ACE for citing to the language in Endorsement 52, Section 7 that states, "[y]ou will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence,'" Doc. 19, Ex. 3 at 104, as ignoring the definition of "Deductible Per Occurrence" and "ultimate net loss." "Ultimate net loss" is defined as the total amount "the insured" is legally obligated to pay as damages. *Id.* at 24. Therefore, substituting in the definitions, this Endorsement explains that "[Select Build] will pay all sums [Realen Homes or Select Build or another insured under the Policy] becomes legally obligated to pay within the Deductible Per Occurrence." *See id.* at 104. "Deductible Per Occurrence" is "the amount of 'ultimate net loss' (defined as the total amount the insured [Realen Homes or Select Build or anther insured under the Policy] is legally obligated to pay as damages) under this Policy which [Select Build] ha[s] a duty to pay in excess of the 'retained limit.'" *See id.* at 24, 104. The definitions of "ultimate net loss" and "Deductible Per Occurrence" do not support Plaintiffs' interpretation, but rather show that Select Build, as a Named Insured, is responsible for the

13

deductible when an additional insured is sued because the ultimate net loss is defined as the amount Realen Homes (or any other insured) would be liable for under the Policy.

Plaintiffs also argue that if there is any doubt as to the meaning of terms in the Policy, the Court should interpret the Policy in favor of coverage and against the insurer. While Illinois directs courts to interpret insurance policies in favor of coverage, a policy should only be interpreted against the insurer once the Court has determined that its terms are ambiguous. *See Indiana Ins. Co. v. Powerscreen of Chicago, Ltd.*, 975 N.E.2d 141, 149, 2012 IL App (1st) 103667, 363 Ill. Dec. 339 (2012) ("Courts should liberally construe insurance policies in favor of coverage, and where an ambiguity exists in the insurance contract, it should be resolved in favor of the insured and against the insurer."). Similarly, Plaintiffs state that if ACE had wanted the deductible provision to apply to additional insureds, it would have so specified. However, here Policy terms are not ambiguous and the plain language of the Deductible makes it clear that the parties intended it to apply to all claims.

Plaintiffs cite several cases to argue that fronting policies may allocate some, but not all, of the risk back to the policyholder, therefore although this Policy may be self-insurance for claims against Select Build, but is not necessarily self-insurance for claims against additional insureds. *See Exec. Risk Indem. Inc. v. Charleston Area Med. Ctr. Inc.*, 681 F. Supp. 2d 694, 702 n.11 (S.D. W. Va. 2009) (explaining, "[u]nder a fronting arrangement, a licensed insurer issues a policy with the understanding that another party will reinsure the fronting insurer for most, if not all, of the claims on that policy" (citation omitted) (internal quotation marks omitted)). These cases do define fronting policies as policies that allow the insured to keep "most, if not all" of the risk; however, none of these cases deal with fronting arrangements that divided claims in this fashion. More importantly, Plaintiffs cite to no terms in this Policy that would indicate Select

14

Build signed with the intention of self-insuring claims for up to $1.9 million only against itself, not for any additional insureds.

Both parties ask the Court to take notice of information outside the four corners of the contract to aid its interpretation. To counter ACE's argument that its interpretation is consistent with the general principle that adding additional insureds extends to them the same protection, but does not expand those protections, Plaintiffs argue that to interpret the Policy as a self-insurance retention for all claims violates the agreement that Select Build made to provide liability insurance to Realen Homes. ACE counters that it was not a party to the contract between Select Build and Realen Homes, and the terms of that separate contract have no bearing on the Court's interpretation of this Policy. ACE further argues that if the Court were to examine that contract, it would find no mention of whether Select Build could self-insure or carry a certain amount of deductible. Also ACE argues that Select Build's current interpretation of the Policy contradicts its position in the bankruptcy court, where it has asked that court to stay Holle's claims on the basis that it would be liable to pay the deductible for Realen Homes' liability. *See* Doc. 19, Ex. 9 at 18 (Select Build "will be required to pay the first $1.9 million of any obligation triggered under the ACE insurance Policy as a result of Mr. Holle's State Court Action"). If this Court had found the terms of the Policy to be ambiguous, it might look outside the contract to determine the Parties' intent. *See N. Trust Co. v. MS. Secs. Servs., Inc.*, No. 05 C 3370, No. 05 C 3373, 2006 WL 695668, at *4 (N.D. Ill. Mar. 15, 2006) ("Under the 'four corners rule,' to determine the parties' intent we look to the plain and ordinary meaning of the contract's language, unless that language is ambiguous."). However, the Court has not found ambiguity, so it need not resort to this outside evidence.

Finally, ACE argues that Select Build's bankruptcy is irrelevant for the purposes of this analysis, because Select Build's obligations under the Policy survived the bankruptcy and are unaffected by the reorganization plan, and furthermore Select Build has a large letter of credit that can satisfy the liability. Plaintiffs similarly argue that the bankruptcy has no bearing on ACE's obligation under the Policy, per the Policy's terms. *See* Doc. 19, Ex. 3 at 17 ("Bankruptcy or insolvency of the insured or the insured's estate will not relieve us [i.e. ACE] of our obligations under this policy."). Plaintiffs further argue that the bankruptcy provision means that ACE has agreed to pay within the deductible. This leap does not follow—that ACE retained the obligation to execute under the Policy regardless of the insured's insolvency does not provide any insight into the nature or extent of that obligation. Plaintiffs also argue, and the Court agrees, that the bankruptcy has no bearing on interpretation of the Policy terms and the question of whether the Deductible Per Occurrence applies to claims against additional insureds.

For the foregoing reasons, summary judgment on the question of Select Build's liability for the deductible is granted for ACE. The Court denies Plaintiffs' request for a declaration that the Deductible Per Occurrence applies only to claims against the Named Insureds and that Select Build has no obligation to pay or reimburse ACE for a deductible in connection with Holle's action against Realen Homes.

## II. Select Build's Liability for Allocated Loss Adjustment Expenses, Litigation Costs

ACE also seeks summary judgment on Select Build's request that the Court find the obligation to pay or reimburse ACE for Allocated Loss Adjustment Expenses under the Policy only applies to claims against Named Insureds and that Select Build has no obligation to pay or reimburse ACE for Realen Home's litigation expenses in the underlying suit. ACE argues that,

by the unambiguous terms of Endorsement 52, Select Build is responsible for any allocated loss adjustment expenses or litigation costs that Realen Homes might incur in the underlying action.

In the briefing on the cross motions for summary judgment, Plaintiffs concede that ACE has no duty to defend or reimburse litigation expenses under the Policy. *See* Doc. 24 at 8 ("Many excess liability insurance policies do not contain a duty to defend or even an obligation to reimburse defense costs. That is the very case here." (citation omitted)). Plaintiffs now assert they "never contended that ACE has a duty to defend Realen or pay the allocated loss adjustment expenses," *id.*, and that their position is ACE has the responsibility to pay liability within the deductible for claims against additional insureds. The Court agrees that under the clear terms of the Policy, ACE does not have a duty to defend and is not responsible for expenses in the underlying suit. *See* Doc. 19, Ex. 3 at 103 ("You agree with us that we shall not have any duty to defend any such 'suit.' You agree with us that we shall have no duty to pay any 'allocated loss adjustment expenses' under the policy, either within or in excess of the Deductible amounts, with respect to any claim or 'suit.').

Plaintiffs seek a declaration, however, that they are not responsible for those expenses either. Plaintiffs argue that the same language in Endorsement 52 ("You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence and all 'allocated loss adjustment expenses' related to such claims") means that Select Build is responsible only for allocated loss adjustment expenses when the claim is against a Named Insured, not an additional insured. However, for the reasons stated above, that argument fails—the plain terms of the Policy dictate that this phrase applies to all claims that Select Build becomes legally obligated to pay under the Policy, whether brought against a Named or additional insured. Furthermore, the Policy states that, "[Select Build] and [ACE] mutually agree that [Select Build] will contract

17

with the Claim Service Organization shown in the Schedule to provide investigation, administration, adjustment, and settlement services, and to provide for the defense of all claims or 'suits' arising under this policy." *Id.* Select Build retained the responsibility to defend all claims under the policy and administer all claims through a third-party. Under the unambiguous terms of this Endorsement, Select Build is responsible for expenses in the underlying suit.

Summary judgment is therefore entered for ACE on this issue.

### III. Select Build's Request for a Coverage Finding in the Underlying Case

Select Build also asks the Court for a declaration that ACE must provide coverage in the underlying action for up to the per occurrence $1.9 million limit. ACE argues that a determination of its potential coverage obligation in the underlying case is premature. The Court agrees and declines to reach that question at this time.

The underlying suit against Realen Homes is on-going in the Circuit Court of Cook County. The Parties represent that, as of the summary judgment briefing, that court had not made a determination on liability. In addition, many key aspects of the coverage issue have not been presented to this Court, including whether Realen Homes or Select Build have additional insurance policies, as well as a full presentation of the nature of the alleged injuries and the scope of coverage. Whether and to what extent ACE must provide coverage in the underlying suit is not ripe for adjudication at this time. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."); *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) ("Illinois law is clear that the determination of whether [the insurer] has a duty to indemnify is not ripe until the underlying litigation is terminated.") (citing *Aetna Cas. & Sur. Co. v. Prestige Cas. Co.*, 553 N.E.2d 39, 41, 195 Ill. App. 3d 660, 142 Ill.

18

Dec. 689 (1990) ("The duty to indemnify arises only after the insured becomes legally obligated to pay damages in the underlying action.")).

The Court exercises its discretion in refusing to reach the issue and denies Select Build's request for a declaratory judgment that ACE must provide coverage in the underlying case. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680–81 (7th Cir. 1992) (explaining that dismissing indemnification claim when underlying suit is pending is not a strict jurisdictional rule, "it is relevant rather to the district judge's exercise of his equitable discretion to grant or withhold declaratory relief and to accelerate or retard his consideration of this suit in tandem with the [state] suit"); *Ins. Co. of W. v. County of McHenry*, No. 02 C 2291, 2002 WL 1803743, at *3 (N.D. Ill. Aug. 6, 2002) (finding declaratory judgment would be premature because underlying liability uncertain). Therefore the Court dismisses without prejudice Plaintiffs' request for an indemnification finding. Plaintiffs may refile this claim at a later date if liability is adjudicated in the state court proceeding. *See Sentinel Ins. Co., Ltd. v. Yorktown Indus., Inc.*, 14 CV 4212, 2015 WL 3896910, at *3 (N.D. Ill. June 23, 2015) (dismissing duty to indemnify count without prejudice).

## CONCLUSION

For the foregoing reasons, ACE's Motion for Summary Judgment [22] is granted and Plaintiffs' Motion for Summary Judgment [20] is denied. Judgment is therefore entered for ACE on all claims except Plaintiffs' request for a declaratory judgment that ACE must provide coverage in the underlying action. That claim is dismissed without prejudice to Plaintiffs' refiling if and when liability is determined in Cook County. This case is terminated.

Dated: November 16, 2015

_____
SARA L. ELLIS
United States District Judge